**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| MEG ADAMS INTERIOR DESIGN, INC. and LAUREN RUBINSTEIN PHOTOGRAPHY LLC,<br>     Plaintiffs,<br><br>v.<br><br>KELLIE GRIFFIN INTERIORS, INC. and KELLIE GRIFFIN,<br>     Defendants and Counterclaim Plaintiffs,<br><br>v.<br><br>MEG ADAMS INTERIOR DESIGN, INC., MARGARET ADAMS and JERRY KOPYDLOWSKI,<br><br>     Counterclaim Defendants | CIVIL ACTION NO.<br>1:12-CV-02614-JEC |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT, AND DEFENDANTS' COUNTERCLAIMS

Defendants Kellie Griffin Interiors, Inc. ("KGI") and Kellie Griffin

("Griffin") (collectively, "Defendants") hereby set forth their Answer and

Affirmative Defenses to the Complaint for Copyright Infringement and Unfair

Competition ("Complaint") filed by Plaintiffs Meg Adams Interior Design, Inc.

("MAID") and Lauren Rubinstein Photography LLC ("Rubinstein") (collectively,

"Plaintiffs"), and hereby assert their related Counterclaims.

## ANSWER TO COMPLAINT

Responding to the individually enumerated paragraphs of the Complaint,

Defendants answer as follows:

1.     Defendants admit this is an action for federal copyright infringement.

Defendants deny the legal and factual sufficiency of Plaintiffs' claims and deny all

liability.

## JURISDICTION

2.     Admitted.

3.     Admitted.

4.     Admitted.

## PARTIES

5.     Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 5, and the same are

therefore denied.

6.     Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 6, and the same are

therefore denied.

7.      Admitted.

8.      Admitted.

## BACKGROUND FACTS

9.      Defendants admit that MAID is an Atlanta interior design firm.
Griffin began working for MAID in or around July 2010.  Defendants deny Griffin
was retained as a full-time unpaid intern to assist with the day-to-day tasks
involved in running an interior design business.  Griffin admits that at some point
after the beginning of her work engagement, MAID began paying Griffin on a
weekly basis.  Defendants deny each and every remaining allegation contained in
Paragraph 9.

10.      Denied.

11.      Defendants admit that Griffin took photographs of certain completed
projects.  Defendants are without knowledge or information sufficient to form a
belief as to the truth of the allegations that a MAID employee took photographs of
certain completed projects, and the same are therefore denied.  Defendants deny
each and every remaining allegation contained in Paragraph 11.

12.      Defendants are without knowledge or information sufficient to form a
belief as to the truth of the allegations contained in Paragraph 12, and the same are

therefore denied.

13.     Defendants admit that, in April 2011, Rubinstein Photography took pictures of the bedroom and bathroom that Griffin designed during her work engagement with MAID at a model home called the 2011 Decorators' Show House and Gardens.  Defendants deny each and every remaining allegation contained in Paragraph 13.

14.     Defendants admit that the U.S. Copyright Office issued Registration No. VA 1-818-314.  Defendants are without knowledge or information sufficient to form a belief as to any allegations concerning the validity of the registration or the photographs allegedly covered by the registration, and therefore deny them. Defendants deny each and every remaining allegation in Paragraph 14.

15.     Defendants admit that the U.S. Copyright Office issued Registration No. VA 1-100-449, but Defendants deny the validity of the registration to the extent it purports to cover photographs taken by Griffin.

16.     Defendants admit that the U.S. Copyright Office assigned application numbers 1-781548968 and 1-781549023 to copyright applications filed on behalf of MAID, but Defendants deny the validity of the applications to the extent the applications purport to cover photographs taken by Griffin.  Defendants deny each and every remaining allegation contained in Paragraph 16.

17.    Defendants admit that Griffin's work engagement with MAID ended in or about July 2011.  Defendants deny each and every remaining allegation contained in Paragraph 17.

18.    Defendants admit that Griffin formed KGI on or about August 31, 2011.  Defendants deny each and every remaining allegation contained in Paragraph 18.

19.    Defendants admit that they published photographs taken by Griffin of certain completed projects on the website for KGI (the "Website").  Defendants deny that MAID or any other party owns a copyright in any photographs taken by Griffin.  Defendants admit that they published the photographs allegedly taken by Rubinstein on the Website, but deny that they were aware at the time the photographs were posted that the photographs were allegedly owned by Rubinstein.  Without admitting any fault or liability, Defendants removed the photographs allegedly owned by Rubinstein from the Website on August 6, 2012.  Defendants deny each and every remaining allegation contained in Paragraph 19.

20.    Denied.

21.    Denied.

22.    Denied.

23.    Denied.

24.     Defendants admit that they filed suit against Margaret Adams, Jerry Kopydlowski, and MAID for, *inter alia*, slander and libel in Dekalb County Superior Court.  Defendants deny each and every remaining allegation contained in Paragraph 24.  Per the Parties' agreement, on August 22, 2012, Defendants dismissed the Dekalb County Superior Court case without prejudice, so that all claims could be heard in the instant action.  A copy of the dismissal is attached as Exhibit A hereto.

## COUNT I

### Direct Copyright Infringement (by Meg Adams Interiors)

25.     Defendants' responses to the allegations of paragraphs 1-24 above are incorporated by reference as if fully set forth herein.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

## COUNT II

6

**Direct Copyright Infringement (by Rubinstein Photography)**

33.     Defendants' responses to the allegations of paragraphs 1-32 above are incorporated by reference as if fully set forth herein.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34, and the same are therefore denied.

35.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35, and the same are therefore denied.

36.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36, and the same are therefore denied.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

## COUNT III

**Violation of the Lanham Act, 15 U.S.C. § 1125(a) (by Meg Adams Interiors)**

41.     Defendants' responses to the allegations of paragraphs 1-40 above are

incorporated by reference as if fully set forth herein.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

## COUNT IV

**Violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372 (by Meg Adams Interiors)**

46.    Defendants' responses to the allegations of paragraphs 1-45 above are incorporated by reference as if fully set forth herein.

47.    Denied.

48.    Denied.

49.    Denied.

50.    Denied.

## COUNT V

**Attorney's Fees and Expenses Act under O.C.G.A. § 13-6-11 (by both Plaintiffs)**

51.    Defendants' responses to the allegations of paragraphs 1-50 above are incorporated by reference as if fully set forth herein.

52.    Denied.

53.    Denied.

54.    Denied.

Except as specifically admitted, Defendants deny each and every allegation contained in Plaintiffs' Complaint, including Plaintiffs' prayer for relief.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense – Invalidity of Copyright
**(against Meg Adams Interior Design, Inc.)**

MAID's claim of copyright infringement against Defendants is barred because MAID is not the owner of the copyright at issue.

### Second Affirmative Defense – Fraud on the Copyright Office
**(against Meg Adams Interior Design, Inc.)**

MAID's copyright infringement claim (Count I) against Defendants is barred due to its fraud on the U.S. Copyright Office.  Specifically, in its application for Registration No. VAu 1-100-449 and in Application Nos.  1-781549023 and 1-781548968, MAID knowingly represented that it owned a copyright in photographs taken by Griffin in her capacity as an independent contractor, or, in the alternative, as an employee acting outside the scope of her employment.   (*See* Complaint, Dkt. No. 1, Exhs. B and C).   If MAID had accurately represented to the U.S. Copyright Office that the photographs that are the subject of Registration No. VAu 1-100-449 and in Application Nos.  1-781549023 and 1-781548968 were

in fact taken by Griffin as an independent contractor, or, in the alternative, as an employee acting outside the scope of her employment, the U.S. Copyright Office would not have granted the registration and would deny registration to the pending applications.

## Third Affirmative Defense – License
### (against Meg Adams Interior Design, Inc.)

In the alternative, if MAID is determined to be the owner of the copyright in any photographs taken by Griffin, Defendants' use of such photographs was subject to an express or implied license by MAID.

## Fourth Affirmative Defense – Waiver
### (against Meg Adams Interior Design, Inc.)

In the alternative, if MAID is determined to be the owner of the copyright in any photographs taken by Griffin, MAID's claims are barred by the doctrine of waiver.

## DEFENDANTS' COUNTERCLAIMS AGAINST
## PLAINTIFF MEG ADAMS INTERIOR DESIGN, INC.,
## <u>MARGARET ADAMS, AND JERRY KOPYDLOWSKI</u>

Defendants, without waiving any defenses set forth above, set forth the

following counterclaims against MAID and joined Defendants Margaret Adams

("Adams") and Jerry Kopydlowski ("Kopydlowski"),[1] and show the Court as

follows:

### NATURE OF THE ACTION

1.      This is an action in counterclaim for violations of the Fair Labor

Standards Act, breach of contract, slander, civil conspiracy to commit slander,

libel, civil conspiracy to commit libel, tortious interference with contractual and/or

business relations, civil conspiracy to commit tortious interference with

contractual and/or business relations, deceptive trade practices, civil conspiracy to

commit deceptive trade practices, unjust enrichment, and attorneys' fees and

expenses.

### THE PARTIES

2.      Adams is a natural person and a resident of DeKalb County, Georgia,

and is otherwise subject to the jurisdiction and venue of this Court.  Adams can be

---

[1] *See* Defendants' pending Consent Motion for Permissive Joinder of
Margaret Adams and Jerry Kopydlowski as Counterclaim Defendants, Dkt. No. 9,
filed on September 6, 2012.

served with process at 5027 Chamblee Dunwoody Road, Dunwoody, Georgia 30338.

3.      Kopydlowski is a natural person and a resident of DeKalb County, Georgia, and is otherwise subject to the jurisdiction and venue of this Court. Kopydlowski can be served with process at 5027 Chamblee Dunwoody Road, Dunwoody, Georgia 30338.

4.      MAID is a corporation incorporated in Georgia and is a plaintiff in this matter.

5.      Griffin is a natural person and a resident of Fulton County.

6.      KGI is a corporation incorporated in Georgia.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over MAID in that MAID has filed the instant Complaint.  The Court has personal jurisdiction over Adams and Kopydlowski because they are both residents of the State of Georgia.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367. Venue is proper in this Court.

## FACTS GIVING RISE TO THE COUNTERCLAIMS

<u>Griffin's Work Engagement with Adams and MAID</u>

8.      MAID is, and has been at all times relevant to this lawsuit, engaged in the business of interior design in the metropolitan Atlanta area.

9.      Adams is the chief executive officer and sole owner of MAID.

10.     From approximately July 2010 until July 2011, Griffin performed services for Adams and MAID.

11.     Prior to Griffin going to work for Adams and MAID, it was understood by all parties that Griffin was agreeing to work for Adams and MAID in order to gain experience and to build her design portfolio.  There was an agreement between Griffin, Adams, and MAID that Griffin would retain all ownership rights in any work or projects that she performed or created during her work engagement with Adams and MAID.  There is not, nor has there ever been, any agreement between Griffin and either Adams or MAID which would grant ownership rights to Adams or MAID in the work or projects performed or created by Griffin during her work engagement with Adams and MAID.

12.     During the first three weeks of her work engagement with Adams and MAID, Griffin was not paid for the services she provided.  After the initial three-week period, Griffin was paid $250 per week for her services, regardless of how

many hours she actually performed services on behalf of Adams and MAID. During the final two weeks of her work engagement with Adams and MAID, Griffin was paid $350 per week for her services, regardless of how many hours she actually performed services on behalf of Adams and MAID.

13.     On numerous occasions, Adams and MAID agreed to pay Griffin a percentage-based commission for certain design projects she completed on behalf of MAID.  With the exception of approximately two occasions, when Griffin received a commission payment from MAID that was below the agreed-upon percentage, Adams and MAID did not pay Griffin any commission for projects Griffin completed on behalf of MAID.

14.     During her work engagement with Adams and MAID, Griffin regularly worked more than 40 hours per week.  Adams and MAID never paid Griffin any overtime compensation, nor did they pay her enough such that she received at least the applicable minimum wage for each hour worked.

15.     During her work engagement with Adams and MAID, Griffin worked on and completed multiple interior design projects.  She worked on these projects with little or no any assistance, support, or guidance from Adams or MAID.

16.     Upon completion of a design project, Griffin would take photographs of the completed project.  She used her own camera to take the pictures and her

own computer to process the images.  Neither the photography nor the image processing was completed at the offices of Adams or MAID or using equipment owned by Adams or MAID.

17.    In or about July 2011, Griffin's work engagement with Adams and MAID ended.

### Griffin's Founding of and Interior Design Work With KGI

18.    In August 2011, Griffin founded KGI, her own interior design business.  Since August 2011, KGI has been engaged in the business of interior design in the metropolitan Atlanta area.  Griffin is the chief executive officer and sole owner of KGI.

19.    In March 2012, KGI launched its website (www.kelliegriffininteriors.com).  Griffin's interior design portfolio is featured on the KGI website.  Griffin is the author and owner of all works and images contained on KGI's website and in her portfolio.

### Adams' and MAID's Wrongful Actions Against Griffin and KGI

20.    In December 2011, Griffin submitted her portfolio to Atlanta Symphony Associates, seeking to have KGI selected as a designer for the 2012 Decorators' Show House and Gardens.  KGI was subsequently selected as a designer for the 2012 Decorators' Show House and Gardens.

21.     Following the selection of KGI as a designer for the 2012 Decorators'
Show House and Gardens, Adams and Kopydlowski began making false
statements, both verbally and via various forms of electronic communication,
alleging that Griffin and KGI had stolen the content of the portfolio presented by
Griffin and KGI to Atlanta Symphony Associates.

22.     Following the selection of KGI as a designer for the 2012 Decorators'
Show House and Gardens, Adams made verbal statements to Mylie Kopydlowski,
accusing Griffin of stealing Adams' work and using it in her portfolio and on
KGI's website.  Such statements were false and defamatory.

23.     Following the selection of KGI as a designer for the 2012 Decorators'
Show House and Gardens, Adams made verbal statements to various managers,
employees, and volunteers – including the Chair and the Honorary Chair – of
Atlanta Symphony Associates and the 2012 Decorators' Show House and Gardens
accusing Griffin of stealing Adams' work and using it in her portfolio and on
KGI's website.  Such statements were false and defamatory.

24.     Following the selection of KGI as a designer for the 2012 Decorators'
Show House and Gardens, Adams sent e-mails to various managers, employees,
and volunteers – including the Chair and the Honorary Chair – of Atlanta
Symphony Associates and the 2012 Decorators' Show House and Gardens

accusing Griffin of stealing Adams' work and using it in her portfolio and on KGI's website.  Such statements were false and defamatory.

25.    Following the selection of KGI as a designer for the 2012 Decorators' Show House and Gardens, Adams made verbal statements to various vendors within the metropolitan Atlanta interior design community – including but not limited to the Atlanta Decorative Arts Center, and Liberty Rugs, Kings Home Furnishings, Fred Reed Picture Framing, and Missy Sennowitz – accusing Griffin of stealing Adams' work and using it in her portfolio and on KGI's website, and also accusing Griffin of stealing MAID equipment.  Such statements were false and defamatory.

26.    The verbal and written statements made by Adams were made with malice and constitute charges against Griffin and KGI in regard to their trade, office, or profession, and said statements were calculated to injure Griffin and KGI.

27.    The verbal and written statements made by Adams were made with malice and constitute charges of dishonesty or immorality against Griffin and KGI, and said statements were calculated to injure Griffin and KGI.

28.     The verbal and written statements made by Adams were made both in her personal capacity and in her capacity as the owner and chief executive officer of MAID.

29.     On April 4, 2012, pursuant to O.C.G.A. § 51-5-11, Griffin and KGI sent a request for a written retraction to Adams and MAID.  A copy of the request is attached hereto as Exhibit B.  To date, Adams and MAID have failed and refused to provide the requested written retraction.

30.     Adams continues to make false statements to various third parties, both verbally and via various forms of electronic communication, accusing Griffin of stealing Adams' work and using it in her portfolio and on KGI's website.

<u>Kopydlowski's Wrongful Actions Against Griffin and KGI</u>

31.     Following the selection of KGI as a designer for the 2012 Decorators' Show House and Gardens, Kopydlowski sent text messages to his brother, Jason Kopydlowski, accusing Griffin of stealing Adams' work and using it in her portfolio and on KGI's website.  Such statements were false and defamatory.

32.     Following the selection of KGI as a designer for the 2012 Decorators' Show House and Gardens, Kopydlowski sent made verbal statements to various vendors within the metropolitan Atlanta interior design accusing Griffin of

stealing Adams' work and using it in her portfolio and on KGI's website.  Such statements were false and defamatory.

33.     The verbal and written statements made by Kopydlowski were made with malice and constitute charges against Griffin and KGI in regard to their trade, office, or profession, and said statements were calculated to injure Griffin and KGI.

34.     The verbal and written statements made by Kopydlowski were made with malice and constitute charges of dishonesty or immorality against Griffin and KGI, and said statements were calculated to injure Griffin and KGI.

35.     On April 4, 2012, pursuant to O.C.G.A. § 51-5-11, Griffin and KGI sent a request for a written retraction to Kopydlowski.  A copy of the request is attached hereto as Exhibit C.  To date, Kopydlowski has failed and refused to provide the requested written retraction.

36.     Kopydlowski continues to make false statements to various third parties, both verbally and via various forms of electronic communication, accusing Griffin of stealing Adams' work and using it in her portfolio and on KGI's website.

### The Harm Caused to Griffin and KGI

37.     The wrongful actions of Adams, MAID, and Kopydlowski have injured and continue to injure Griffin's and KGI's reputation and have exposed Griffin and KGI to public hatred, contempt, and/or ridicule.

38.     The wrongful actions of Adams, MAID, and Kopydlowski have prevented and/or deterred Griffin and KGI from being able to open accounts with various vendors, including but not limited to Liberty Rugs, Kings Home Furnishings, Fred Reed Picture Framing, and Missy Sennowitz.

39.     The wrongful actions of Adams, MAID, and Kopydlowski resulted in Griffin's and KGI's biographical information being omitted from the 2012 Decorators' Show House & Gardens program and the preview feature in the April 2012 issue of *Atlanta Homes & Lifestyles* magazine, which in turn resulted in a lost publicity opportunity for Griffin and KGI.

**COUNT I**
Violation of the Fair Labor Standards Act
(Against MAID and Adams)

40.     Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-39 above as if fully set forth herein.

41.     To the extent that a finding is made in this action that Griffin was an employee of MAID (rather than an independent contractor), then MAID and Adams are liable to Griffin for violations of the Fair Labor Standards Act.

42.     To the extent that a finding is made in this action that Griffin was an employee of MAID (rather than an independent contractor), then MAID and Adams both fell within the definition of "Employer" pursuant to 29 U.S.C. § 203(d).

43.     To the extent that a finding is made in this action that Griffin was an employee of MAID (rather than an independent contractor), then MAID and Adams violated the Fair Labor Standards Act by failing to pay Griffin at least the required minimum wage of $7.25 per hour.

44.     To the extent that a finding is made in this action that Griffin was an employee of MAID (rather than an independent contractor), then MAID and Adams violated the Fair Labor Standards Act by failing to pay Griffin at least time-and-one-half her regular rate of pay for all hours worked in excess of 40 hours in a workweek.

45.     To the extent that a finding is made in this action that Griffin was an employee of MAID (rather than an independent contractor), then MAID and Adams violated the Fair Labor Standards Act by failing to maintain records

regarding, among other things, hours worked and wages paid, as required by the Fair Labor Standards Act.

46.    MAID's and Adams' actions in violation of the Fair Labor Standards Act were willful within the meaning of 29 U.S.C. § 255(a).

47.    As a result of MAID's and Adams' violations of the Fair Labor Standards Act, they are liable to Griffin for unpaid minimum wages, unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs.

**COUNT II**
<u>Breach of Contract</u>
(Against MAID and Adams)

48.     Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-47 above as if fully set forth herein.

49.     By offering to pay Griffin a percentage-based commission for the completion of certain design projects on behalf of MAID, and Griffin's completion of the same design projects, the parties entered into multiple valid and binding oral contracts.

50.    Under the terms of the contracts, MAID and Adams were required to pay Griffin a percentage-based commission upon completion of each of the subject design projects.

51.     By failing to pay Griffin the agreed-to commission upon the completion of each of the subject design projects, MAID and Adams breached the contracts.

52.     Griffin has suffered damages as a result of MAID and Adams' breach of the contracts.

## COUNT III
### Slander
(Against MAID, Adams, and Kopydlowski)

53.     Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-52 above as if fully set forth herein.

54.     As set forth in more detail above, MAID, Adams, and Kopydlowski have made and continue to make false and defamatory verbal statements to various third parties about Griffin and KGI.

55.     Such false verbal statements were made by MAID, Adams, and Kopydlowski with malice and without privilege.

56.     Such verbal statements by MAID, Adams, and Kopydlowski constitute charges against Griffin and KGI in regard to their trade, office, or profession, and said statements were calculated to injure Griffin and KGI.

57.     Such false verbal statements by MAID, Adams, and Kopydlowski constitute charges of dishonesty or immorality against Griffin and KGI, and said statements were calculated to injure Griffin and KGI.

58.     Such false verbal statements by MAID, Adams, and Kopydlowski were defamatory, directly disparaged the professional reputation and standing of Griffin and KGI, and cast Griffin and KGI in a false light.

59.     As a direct and proximate result of the false and defamatory statements published by MAID, Adams, and Kopydlowski, Griffin and KGI have suffered substantial injury.

60.     MAID, Adams, and Kopydlowski acted with specific intent to harm Griffin and KGI.

61.     The conduct of MAID, Adams, and Kopydlowski was taken in willful, wanton, malicious and reckless disregard of Griffin's and KGI's rights, as well as of the harm it was causing and was foreseeably likely to cause, so that punitive damages should be imposed on MAID, Adams, and Kopydlowski.

62.     Adams acted as an agent for MAID and in furtherance of MAID's business, and with specific authorization from MAID, when she published false statements concerning Griffin and KGI.  MAID is therefore vicariously liable for the harm caused by Adams' slanderous conduct.

63.     As a result of MAID's, Adams', and Kopydlowski's ongoing slanderous conduct, Griffin and KGI have suffered, and continue to suffer, substantial and irreparable injury and are entitled to injunctive relief to remedy these violations.

64.     MAID's, Adams', and Kopydlowski's continuing actions expose Griffin and KGI to a pending and ongoing threat of immediate and irreparable harm.

65.     If injunctive relief is not granted to stop MAID's, Adams', and Kopydlowski's actions, Griffin and KGI will suffer irreparable injury for which there is no adequate remedy at law.

**COUNT IV**
Civil Conspiracy to Commit Slander
(Against MAID, Adams, and Kopydlowski)

66.     Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-65 above as if fully set forth herein.

67.     MAID, Adams, and Kopydlowski, acting in concert with each other, agreed to take collective actions to make false and defamatory verbal statements to various third parties about Griffin and KGI.

68.     In furtherance of their conspiracy and scheme, MAID, Adams, and Kopydlowski, acting in concert with each other, took overt and wrongful acts to

make false and defamatory verbal statements to various third parties about Griffin and KGI.

69.    MAID's, Adams', and Kopydlowski's conspiratorial acts were designed to disparage the professional reputation and standing of Griffin and KGI, and to cast Griffin and KGI in a false light.

70.    Through their conspiratorial acts, MAID, Adams, and Kopydlowski have proximately caused substantial injury to Griffin and KGI, for which MAID, Adams, and Kopydlowski are jointly and severally liable.

71.    MAID's, Adams', and Kopydlowski's conspiracy to make false and defamatory verbal statements to various third parties about Griffin and KGI was carried out in willful, wanton, malicious and reckless disregard of Griffin's and KGI's rights, in addition to the harm they were causing and were foreseeably likely to cause to Griffin and KGI, so that punitive damages should be imposed on MAID, Adams, and Kopydlowski.

72.    Griffin and KGI have sustained or will sustain irreparable harm as a direct and proximate result of the unlawful actions taken by MAID, Adams, and Kopydlowski.  Unless otherwise restrained by this Court, MAID, Adams, and Kopydlowski will continue their unlawful acts to the irreparable injury of Griffin and KGI, for which there will be no complete and adequate remedy at law.

## COUNT V
### Libel
(Against MAID, Adams, and Kopydlowski)

73.     Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-72 above as if fully set forth herein.

74.     As set forth in more detail above, MAID, Adams, and Kopydlowski have made and continue to make false and defamatory written statements to various third parties about Griffin and KGI.

75.     Such false written statements were made by MAID, Adams, and Kopydlowski with malice and without privilege.

76.     Such written statements by MAID, Adams, and Kopydlowski constitute charges against Griffin and KGI in regard to their trade, office, or profession, and said statements were calculated to injure Griffin and KGI.

77.     Such false written statements by MAID, Adams, and Kopydlowski constitute charges of dishonesty or immorality against Griffin and KGI, and said statements were calculated to injure Griffin and KGI.

78.     Such false written statements by MAID, Adams, and Kopydlowski were defamatory, directly disparaged the professional reputation and standing of Griffin and KGI, and cast Griffin and KGI in a false light.

79.     As a direct and proximate result of the false and defamatory statements published by MAID, Adams, and Kopydlowski, Griffin and KGI have suffered substantial injury.

80.     MAID, Adams, and Kopydlowski acted with specific intent to harm Griffin and KGI.

81.     The conduct of MAID, Adams, and Kopydlowski was taken in willful, wanton, malicious and reckless disregard of Griffin's and KGI's rights, as well as of the harm it was causing and was foreseeably likely to cause, so that punitive damages should be imposed on MAID, Adams, and Kopydlowski.

82.     Adams acted as an agent for MAID and in furtherance of MAID's business, and with specific authorization from MAID, when she published false statements concerning Griffin and KGI.  MAID is therefore vicariously liable for the harm caused by Adams' slanderous conduct.

83.     As a result of MAID's, Adams', and Kopydlowski's ongoing libelous conduct, Griffin and KGI have suffered, and continue to suffer, substantial and irreparable injury and are entitled to injunctive relief to remedy these violations.

84.     MAID's, Adams', and Kopydlowski's continuing actions expose Griffin and KGI to a pending and ongoing threat of immediate and irreparable harm.

85.    If injunctive relief is not granted to stop MAID's, Adams', and Kopydlowski's actions, Griffin and KGI will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT VI
<u>Civil Conspiracy to Commit Libel</u>
(Against MAID, Adams, and Kopydlowski)

86.    Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-85 above as if fully set forth herein.

87.    MAID, Adams, and Kopydlowski, acting in concert with each other, agreed to take collective actions to make false and defamatory written statements to various third parties about Griffin and KGI.

88.    In furtherance of their conspiracy and scheme, MAID, Adams, and Kopydlowski, acting in concert with each other, took overt and wrongful acts to make false and defamatory written statements to various third parties about Griffin and KGI.

89.    MAID's, Adams', and Kopydlowski's conspiratorial acts were designed to disparage the professional reputation and standing of Griffin and KGI, and to cast Griffin and KGI in a false light.

90.     Through their conspiratorial acts, MAID, Adams, and Kopydlowski have proximately caused substantial injury to Griffin and KGI, for which MAID, Adams, and Kopydlowski are jointly and severally liable.

91.     MAID's, Adams', and Kopydlowski's conspiracy to make false and defamatory verbal statements to various third parties about Griffin and KGI was carried out in willful, wanton, malicious and reckless disregard of Griffin's and KGI's rights, in addition to the harm they were causing and were foreseeably likely to cause to Griffin and KGI, so that punitive damages should be imposed on MAID, Adams, and Kopydlowski.

92.     Griffin and KGI have sustained or will sustain irreparable harm as a direct and proximate result of the unlawful actions taken by MAID, Adams, and Kopydlowski.  Unless otherwise restrained by this Court, MAID, Adams, and Kopydlowski will continue their unlawful acts to the irreparable injury of Griffin and KGI, for which there will be no complete and adequate remedy at law.

**COUNT VII**
Tortious Interference with Contractual and/or Business Relations
(Against MAID, Adams, and Kopydlowski)

93.     Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-92 above as if fully set forth herein.

94.     Griffin and KGI maintain contracts and/or advantageous business relations with their suppliers and clients.

95.     MAID, Adams, and Kopydlowski had actual or constructive knowledge of the contracts and/or advantageous business relationships that Griffin and KGI maintained with their suppliers and clients.

96.     MAID's, Adams', and Kopydlowski's interference with Griffin's and KGI's rights under the contracts and/or advantageous business relationships that they maintained with their suppliers and clients was intentional, malicious, carried out through dishonest, fraudulent, unfair, and/or improper means, and specifically designed to injure Griffin's and KGI's business.

97.     Through their wrongful acts of interference, MAID, Adams, and Kopydlowski have proximately caused substantial injury to Griffin and KGI.

98.     MAID's, Adams', and Kopydlowski's interference with Griffin's and KGI's rights was willful, wanton, malicious, and in reckless disregard of those rights, as well as of the harm they were causing and were foreseeably likely to cause to Griffin and KGI, so that punitive damages should be imposed on MAID, Adams, and Kopydlowski.

99.     Adams acted as an agent for MAID and in furtherance of MAID's business, and with specific authorization from MAID, when she tortiously

interfered with Griffin's and KGI's contractual and/or business relations.  MAID is therefore vicariously liable for the harm caused by Adams' tortious conduct.

100.   As a result of MAID's, Adams', and Kopydlowski's ongoing tortious conduct, Griffin and KGI have suffered, and continue to suffer, substantial and irreparable injury and are entitled to injunctive relief to remedy these violations.

101.   MAID's, Adams', and Kopydlowski's continuing actions expose Griffin and KGI to a pending and ongoing threat of immediate and irreparable harm.

102.   If injunctive relief is not granted to stop MAID's, Adams', and Kopydlowski's actions, Griffin and KGI will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT VIII
Civil Conspiracy to Tortiously Interfere
with Contractual and/or Business Relations
(Against MAID, Adams, and Kopydlowski)

103.   Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-102 above as if fully set forth herein.

104.   MAID, Adams, and Kopydlowski, acting in concert with each other, agreed to take collective actions to tortiously interfere with the contracts and/or advantageous business relationships that Griffin and KGI maintained with their suppliers and clients.

105.   In furtherance of their conspiracy and scheme, MAID, Adams, and Kopydlowski, acting in concert with each other, took overt and wrongful acts to tortiously interfere with the contracts and/or advantageous business relationships that Griffin and KGI maintained with their suppliers and clients.

106.   MAID's, Adams', and Kopydlowski's conspiratorial acts were designed to interfere with Griffin's and KGI's ability to conduct business with their suppliers and clients.

107.   Through their conspiratorial acts, MAID, Adams, and Kopydlowski have proximately caused substantial injury to Griffin and KGI, for which MAID, Adams, and Kopydlowski are jointly and severally liable.

108.   MAID's, Adams', and Kopydlowski's conspiracy to tortiously interfere with the contracts and/or advantageous business relationships that Griffin and KGI maintained with their suppliers and clients was carried out in willful, wanton, malicious and reckless disregard of Griffin's and KGI's rights, in addition to the harm they were causing and were foreseeably likely to cause to Griffin and KGI, so that punitive damages should be imposed on MAID, Adams, and Kopydlowski.

109.   Griffin and KGI have sustained or will sustain irreparable harm as a direct and proximate result of the unlawful actions taken by MAID, Adams, and

Kopydlowski.  Unless otherwise restrained by this Court, MAID, Adams, and

Kopydlowski will continue their unlawful acts to the irreparable injury of Griffin

and KGI, for which there will be no complete and adequate remedy at law.

**COUNT IX**
Deceptive Trade Practices
(Against MAID, Adams, and Kopydlowski)

110.   Griffin and KGI adopt and reallege the allegations contained in

paragraphs 1-109 above as if fully set forth herein.

111.   MAID, Adams, and Kopydlowski have attempted, and continue to

attempt, to pass off the photographs and other materials described above that

belong to Griffin as belonging to Adams and MAID.

112.   MAID, Adams, and Kopydlowski have engaged, and continue to

engage, in activities that cause a likelihood of confusion or misunderstanding as to

the source of the photographs and other materials described above.

113.   MAID, Adams, and Kopydlowski have disparaged, and continue to

disparage, the services and business of Griffin and KGI by false and misleading

representations of fact, as set forth in more detail above.

114.   Adams acted as an agent for MAID and in furtherance of MAID's

business, and with specific authorization from MAID, when she engaged in

deceptive trade practices.  MAID is therefore vicariously liable for the harm caused by Adams' wrongful conduct.

115.   As a result of MAID's, Adams', and Kopydlowski's ongoing deceptive trade practices, Griffin and KGI have suffered, and continue to suffer, substantial and irreparable injury and are entitled to injunctive relief to remedy these violations.

116.   MAID's, Adams', and Kopydlowski's continuing actions expose Griffin and KGI to a pending and ongoing threat of immediate and irreparable harm.

117.   If injunctive relief is not granted to stop MAID's, Adams', and Kopydlowski's actions, Griffin and KGI will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT X
Civil Conspiracy to Commit Deceptive Trade Practices
(Against MAID, Adams, and Kopydlowski)

118.   Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-117 above as if fully set forth herein.

119.   MAID, Adams, and Kopydlowski, acting in concert with each other, agreed to take collective actions to engage in deceptive trade practices.

120.   In furtherance of their conspiracy and scheme, MAID, Adams, and Kopydlowski, acting in concert with each other, took overt and wrongful acts to harm Griffin and KGI by engaging in deceptive trade practices.

121.   MAID's, Adams', and Kopydlowski's conspiratorial acts were designed to injure Griffin's and KGI's reputation and business and to allow MAID and Adams to compete against Griffin and KGI deceptively and unfairly.

122.   Through their conspiratorial acts, MAID, Adams, and Kopydlowski have proximately caused substantial injury to Griffin and KGI, for which MAID, Adams, and Kopydlowski are jointly and severally liable.

123.   Griffin and KGI have sustained or will sustain irreparable harm as a direct and proximate result of the unlawful actions taken by MAID, Adams, and Kopydlowski.  Unless otherwise restrained by this Court, MAID, Adams, and Kopydlowski will continue their unlawful acts to the irreparable injury of Griffin and KGI, for which there will be no complete and adequate remedy at law.

**COUNT XI**
Unjust Enrichment
(Against MAID, Adams, and Kopydlowski)

124.   Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-123 above as if fully set forth herein.

125.   By their acts, MAID, Adams, and Kopydlowski have been unjustly enriched at the expense of Griffin and KGI.

## COUNT XII
Attorneys' Fees and Expenses
(Against MAID, Adams, and Kopydlowski)

126.   Griffin and KGI adopt and reallege the allegations contained in paragraphs 1-125 above as if fully set forth herein.

127.   MAID, Adams, and Kopydlowski have acted in bad faith, and/or have caused Griffin and KGI unnecessary trouble and expense in enforcing their rights, entitling Griffin and KGI to recover their costs and expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Griffin and KGI respectfully demand that judgment be made and entered in their favor and against MAID, Adams, and Kopydlowski as follows:

a.   That Griffin have and recover from MAID and Adams unpaid minimum wages and unpaid overtime compensation, plus liquidated damages, in an amount to be determined at trial;

b.   That Griffin have and recover from MAID and Adams unpaid commissions in an amount to be determined at trial.

c.     That Griffin and KGI have and recover from MAID, Adams, and Kopydlowski actual and compensatory damages in an amount to be determined at trial;

d.     That MAID, Adams, and Kopydlowski be enjoined from engaging in defamatory conduct, tortious interference with contractual and/or business relations, and deceptive trade practices against Griffin and/or KGI;

e.     That Griffin and KGI have and recover from MAID, Adams, and Kopydlowski punitive damages in an amount to be determined at trial;

f.     That Griffin and KGI have and recover from MAID, Adams, and Kopydlowski all costs and attorneys' fees they incur in the prosecution of this lawsuit, pursuant to the Fair Labor Standards Act, O.C.G.A. § 13-6-11, and other applicable law; and

g.     That Griffin and KGI have and recover such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Griffin and KGI demand a trial by jury on all issues so triable.

Respectfully submitted this 7th day of September, 2012.[2]

/s/ Kathryn W. Bina
Jason D. Rosenberg (Ga. Bar No. 510855)
jason.rosenberg@alston.com
Brett E. Coburn (Ga. Bar No. 171094)
brett.coburn@alston.com
Kathryn W. Bina (Ga. Bar No. 956052)
kitty.bina@alston.com

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000
(404) 881-7777 (fax)

*Attorneys for Defendants Kellie
Griffin Interiors, Inc. and
Kellie Griffin*

---

[2] Pursuant to Local Rule 7.1(D), Defendants certify that this notice has been prepared using 14 point Times New Roman font, as permitted by Local Rule 5.1(B).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2012, I electronically filed the

foregoing pleading with the Clerk of Court using the CM/ECF system.

Notification of such filing has been provided to all attorneys of record.


Dated: September 7, 2012                    */s/ Kathryn W. Bina*
                                            Jason D. Rosenberg (Ga. Bar No. 510855)
                                            jason.rosenberg@alston.com
                                            Brett E. Coburn (Ga. Bar No. 171094)
                                            brett.coburn@alston.com
                                            Kathryn W. Bina (Ga. Bar No. 956052)
                                            kitty.bina@alston.com

                                            ALSTON & BIRD LLP
                                            One Atlantic Center
                                            1201 West Peachtree Street
                                            Atlanta, Georgia 30309
                                            (404) 881-7000
                                            (404) 881-7777 (fax)

                                            *Attorneys for Defendants Kellie Griffin*
                                            *Interiors, Inc. and Kellie Griffin*